Pavneet Singh Uppal, SBN 016805
David G. Myers, SBN 038484
FISHER PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
Telephone: (602) 281-3400
Fax: (602) 281-3401
puppal@fisherphillips.com
dmyers@fisherphillips.com
Attorneys for Defendant

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jodell Dodge,<br><br>               Plaintiff,<br><br>v.<br><br>FirstService Residential Arizona, LLC,<br><br>               Defendant. | No. CV-24-01550-PHX-SMM<br><br>**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>(Oral Argument Requested) |

      Defendant FirstService Residential Arizona, LLC ("Defendant") respectfully moves this Court for dismissal of Plaintiff Jodell Dodge's ("Plaintiff") First Amended Complaint (Doc. 18) ("Amended Complaint") in its entirety with prejudice, pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6). Plaintiff's Amended Complaint pleads a single count for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). Because the Amended Complaint does not cure the defects which resulted in dismissal of her original Complaint, the Amended Complaint should likewise be dismissed, with prejudice and without leave to amend.

      Plaintiff was employed by Defendant as a Spa & Fitness Manager at Corte Bella Country Club ("CBCC"). (Doc. 18, ¶ 12) Plaintiff once again alleges that she was subjected to ageist comments by non-employee, non-party CBCC residents, which purportedly created a hostile work environment and allegedly led to her constructive discharge. (Doc. 18, ¶¶ 14–20, 26, 44) According to Plaintiff, certain unnamed and

unidentified CBCC residents: (a) told Plaintiff "that they did not like the way she dressed because she dressed 'too young' for her age;" (b) commented to Plaintiff about "wearing high heels 'at her age,' noting that they used to wear high heels when they 'were young,' but now they cannot;" (c) complimented Plaintiff for "appear[ing] 'too young to work' there;" and (d) criticized Plaintiff for "dress[ing] 'inappropriately.'" (Doc. 18, ¶¶ 15–19)

Notably, these are the same alleged comments that this Court already found insufficient to state a claim for hostile work environment and constructive discharge based on age. As the Court previously opined, "The residents' remarks that Plaintiff identifies do not rise to the level of being so severe or pervasive that they created an objectively abusive working environment. Similarly, Plaintiff's allegation that her resignation amounted to a constructive discharge as a result of the work environment she experienced is conclusory at best." (Doc. 17, 6:20–24) The Amended Complaint does not include a single new or different allegation of specific ageist comments (beyond those which the Court previously ruled were insufficient) in support of Plaintiff's claims.

Therefore, even assuming without conceding the veracity of these allegations, Plaintiff's Amended Complaint still fails to plead an actionable claim for either hostile work environment or constructive discharge. Simply put, the alleged age-based remarks that Plaintiff attributes to unknown and unidentified CBCC residents—none of whom were Plaintiff's supervisor, indirect supervisor, or coworker—are not even remotely severe or pervasive enough to alter the conditions of Plaintiff's employment and create an abusive or hostile work environment because of her age. Because Plaintiff fails to allege the severe or pervasive harassment necessary to support her hostile work environment claim, it is impossible for her to meet the higher standard applicable for constructive discharge, which requires demonstrating that the conditions were so intolerable that a reasonable person would leave the job. Accordingly, Plaintiff's Amended Complaint must be dismissed with prejudice.

This Motion is supported by the following Memorandum of Points and Authorities, all pleadings and papers on file in this action, and such matters as may be

FP 55577764.1

presented to the Court during any oral argument on this matter. Undersigned counsel provides his certification in compliance with LRCiv. 12.1(C) attached hereto as **Exhibit A**. As of the date of filing this Motion, the parties have been unable to agree to further amendment of the Amended Complaint to resolve the deficiencies therein.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    RELEVANT BACKGROUND**

**A.    Allegations in the Original Complaint**

This matter arises from Plaintiff's employment relationship with Defendant. In her original Complaint, Plaintiff alleges she began working for Defendant on March 3, 2014, and was employed as the Spa & Fitness Manager at CBCC. (Doc. 1, ¶¶ 11–12) After working for Defendant for seven years without incident, suddenly, in October 2021, Plaintiff "became the subject of an increasingly hostile work environment based on her age." (Doc. 1, ¶ 13) Plaintiff's' only factual allegations to support this claim are that "[t]he residents who lived at CBCC repeatedly subjected [her] to derogatory commentary based on her age." (Doc. 1, ¶ 14) The entirety of the comments the residents purportedly made to Plaintiff were:

(1)    "they did not like the way she dressed because she dressed 'too young' for her age;"

(2)    "her wearing high heels 'at her age,' noting that they used to wear high heels when they 'were young,' but now they cannot;" and

(3)    "she appeared 'too young to work' there."

(Doc. 1, ¶¶ 15–17)

Plaintiff alleges she reported the residents' conduct to Defendant's management one time, on October 8, 2021, but Defendant "fail[ed] to properly address the resident's hostility toward [her] based on her age." (Doc. 1, ¶¶ 19, 22) As a result, Plaintiff contends "the residents grew increasingly hostile toward [her] and began making unfounded complaints against her for simply doing her job." (Doc. 1, ¶22) According to Plaintiff, this increasing hostility led to "one instance," on an unspecified date, where she

FP 55577764.1

"received criticism for enforcing policies of CBCC's spa and fitness department, which resulted in her being publicly critiqued and criticized during open forum meetings with the CBCC Board of Directors." (Doc. 1, ¶ 23) As a result of these incidents, Plaintiff claims she "felt compelled to resign on February 1, 2023." (Doc. 1, ¶ 36)

### B. The Court's Dismissal of the Complaint for Failure to State a Claim

Defendant filed a motion to dismiss the Complaint for failure to state a claim, and the Court granted Defendant's motion and dismissed Plaintiff's Complaint without prejudice with leave to amend. In the Court's order dismissing the Complaint, the Court identified the defects therein and gave clear direction on how to cure them.

First, the Court found that Plaintiff "fails to state an actionable claim under the continuing violations doctrine," explaining that "Plaintiff's Complaint is devoid of any specific allegations of discriminatory acts occurring between October 2021 and February 2023," and that "[w]hile Plaintiff makes reference to continuing violations, the vague assertion that such discriminatory conduct did occur in the 300 days preceding August 14, 2023 is insufficient for the Court to conclude that there was 'an act contributing to the claim' that occurred within the limitations period." (Doc. 17, 5:2–3)

Next, the Court found that "Plaintiff's allegations, taken as true, are insufficient to state a plausible hostile work environment claim," explaining that:

> The allegations contained in Plaintiff's Complaint do not support Plaintiff's argument that she experienced a "sustained campaign" of discriminatory conduct on the basis of her age. The frequency of the residents' discriminatory remarks is unclear from Plaintiff's [C]omplaint and the specified comments made by residents do not appear to have been physically threatening, nor particularly humiliating. While it does appear that Plaintiff, in one instance, was criticized or reprimanded for enforcing departmental policies, it is not apparent from Plaintiff's Complaint that this was related to the alleged discriminatory conduct of the residents. The residents' remarks that Plaintiff identifies do not rise to the level of being so severe or pervasive that they created an objectively abusive working environments. Similarly, Plaintiff's allegation that her resignation amounted to a constructive discharge as a result of the work environment she experienced is conclusory at best.

4

(Doc. 17, 6:12–24)

Next, the Court noted that Plaintiff's allegation that a resident told her she was "too young to work there" cannot support her ADEA claim because "the ADEA does not prohibit discrimination on the basis of being too young." (Doc. 17, 6:25–7:2)

Last, the Court highlighted that Plaintiff failed to allege her age in the Complaint, which she is required to do to state a claim under the ADEA. (Doc. 17, 7:3–8)

Due to the above deficiencies, the Court ordered that Plaintiff was permitted to amend her Complaint "to include her age and specific allegations of discriminatory conduct occurring within the 300-day limitations period," but warned that it would not consider more specific allegations not included in her EEOC charge unless they are "like or reasonably related to" the allegations in her EEOC charge. (Doc. 17, 7:14–28)

### C. New Allegations in the Amended Complaint

Plaintiff's Amended Complaint adds very little in response to the Court's order. It makes the easy fix by including Plaintiff's age (61) and introduces three alleged incidents on three specified days within the 300-day limitations period—December 22, 2022, January 20, 2023, and January 25, 2023—with the blanket conclusion that they "are consistent with, and reasonably related to, the allegations in Plaintiff's EEOC charge dated August 14, 2023." (Doc. 18, ¶¶ 5, 19, 28) With the inclusion of these three new alleged incidents, Plaintiff's Amended Complaint now asserts the following saga:

She is currently a 61-year-old woman who began working for Defendant on March 3, 2014, and was employed as the Spa & Fitness Manager at CBCC. (Doc. 18, ¶¶ 5, 11–12) After seven years without incident, she suddenly became "the subject of an increasingly hostile work environment based on her age." (Doc. 18, ¶ 13) Beginning in October 2021, unnamed and unidentified CBCC residents started making derogatory comments to her based on her age. (Doc. 18, ¶¶ 13–14) These comments included that "she dressed 'too young' for her age," was "wearing high heels 'at her age,'" and "appear[ed] 'too young to work' there." (Doc. 18, ¶¶ 15–17) She reported the residents' comments to Defendant's management on October 8, 2021, but Defendant dismissed her

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FP 55577764.1

complaints. (Doc. 18, ¶ 21) The comments then allegedly escalated over the next 16 months, and in rapid succession culminated in "public criticism" by CBCC residents "for her appearance, demeanor, and management style" in "open forum meetings" on December 22, 2022, January 20, 2023, and January 25, 2023. (Doc. 18, ¶ 19) Sometime within these 16 months, there was also "one instance" where she "received criticism for enforcing policies of CBCC's spa and fitness department, which resulted in her being publicly critiqued and criticized during open forum meetings with the CBCC Board of Directors." (Doc. 18, ¶ 24) As a result, she "was left with no choice but to resign her position on February 1, 2023." (Doc. 18, ¶ 26)

As discussed below, Plaintiff's inclusion of three new instances of alleged discriminatory conduct does not establish a continuing violation. But assuming for the sake of argument that Plaintiff overcomes this hurdle, the addition of these three instances, whether considered separately or in conjunction with the same vague, infrequent, and bare bones allegations of derogatory remarks made in the preceding 16 months, do not arise to the level of being so severe or pervasive as to alter the conditions of Plaintiff's employment and create an age-based abusive or hostile work environment.

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Complaints must make a short and plain statement showing that the plaintiff is entitled to relief for her claims. Fed. R. Civ. P. 8(a)(2). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pursuant to Rule 12(b)(6), a court should dismiss a claim in a complaint that fails "to state a claim upon which relief can be granted." The United States Supreme Court has held that for a complaint to survive a motion to dismiss pursuant to Rule 12(b)(6), it must at a minimum, "give the defendant fair notice of what the...claim is and the grounds upon which it rests" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)

6

(internal quotation and citation omitted). Specifically, dismissal is appropriate where a complaint: (1) "fails to state a cognizable legal theory"; or (2) "fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016) (citation omitted)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding a plaintiff must allege sufficient facts to state a claim of relief that is plausible on its face). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

### III.  ARGUMENT

Defendant categorically denies any wrongdoing in this matter and asserts that Plaintiff's claims rely solely on conclusory allegations which fail to demonstrate the elements of each claim alleged. As a result, the claims fail to raise a right to relief above a mere speculative level and are subject to dismissal under Rule 12(b)(6). Plaintiff has failed to plead the necessary prima facie elements of her hostile work environment and constructive disclosure claims under the ADEA. Without a sufficient factual basis, Plaintiff's claims are not actionable on their face and must be dismissed.

### A.  Plaintiff's Amended Complaint Fails to State an Actionable Claim for Either Age Discrimination or Constructive Discharge

#### 1. *Plaintiff's Claim for a Hostile Work Environment Based on Age Fails as a Matter of Law Because Plaintiff Has Not Shown that Defendant Knew or Should Have Known of the Residents' Alleged Ongoing Conduct*

Plaintiff alleges that CBCC residents made derogatory comments to her based on her age thereby subjecting her to a hostile work environment. Because CBCC residents are not Defendant's employees, Defendant can be liable for their harassing conduct only if Defendant "either ratifie[d] or acquiesce[d] in the harassment by not taking immediate and/or corrective actions when it knew or should have known of the conduct." *Folkerson v. Circus Circus Enters., Inc.*, 107 F.3d 754, 756 (9th Cir. 1997); *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 647 (9th Cir. 2021) ("[I]t is well established than an employer

7

can create a hostile work environment by failing to take immediate and corrective action in response to a coworker's or third party's sexual harassment or racial discrimination the employer knew or should have known about.").

Here, Plaintiff alleges the discriminatory conduct first began in October 2021, and that she reported the residents' comments to Defendant's management on October 8, 2021. (Doc. 18, ¶¶ 13, 21) Plaintiff alleges the residents continued to make derogatory comments over the next 16 months, culminating in her public criticism at three open forum meetings between December 2022 and January 2023. (Doc. 18, ¶ 41) However, nowhere in the Amended Complaint does Plaintiff allege that she reported the ongoing conduct to Defendant's management at any time after October 8, 2021. Nor does Plaintiff's Amended Complaint identify what specific derogatory comments were said, which residents made the comments, or the frequency that the comments were made in the approximate one-week period between the commencement of the allegedly unwelcome comments in October 2021 and her reporting of those limited comments to Defendant's management on October 8, 2021. Because "not every insult or harassing comment will constitute a hostile work environment," *Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000), Plaintiff "must do more than merely allege that she was subjected to insulting comments about her age to make out a claim of hostile environment harassment," *Salehian v. Nev. State Treasurer's Office*, 618 F. Supp. 3d 995, 1010 (D. Nev. 2022). Here, Plaintiff has simply failed to allege that the offensive comments were known, or should have been known, by Defendant, and that Defendant failed to take remedial action following knowledge of the comments. *Salehian*, 618 F. Supp. 3d at 995.

    **2.**    *Plaintiff's Claim for a Hostile Work Environment Based on Age Fails as a Matter of Law Because the Alleged Conduct Was Neither Severe nor Pervasive*

The Ninth Circuit has not definitively recognized an age-related hostile work environment claim. *Stevens v. Cty. of San Mateo*, 267 F. App'x 684, 685 (9th Cir. 2008). The Ninth Circuit in *Stevens* analyzed age-related hostile work environment claims

under the framework established by *Vasquez v. Cty. of L.A.*, 349 F.3d 634 (9th Cir.2003), which discussed only race and gender related hostile work environment claims under Title VII. *Id*. Under the Ninth Circuit standard for hostile work environment claims, Plaintiff must make a *prima facie* case by demonstrating that: "(1) she was subjected to verbal or physical conduct based on age, (2) this conduct was unwelcome, and (3) this conduct was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment." *Freitag v. Ayers*, 468 F.3d 528, 539 (9th Cir. 2006).

Factors to consider in determining whether conduct was sufficiently "severe or pervasive" include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993). Ageist slurs that are "isolated and sporadic," and "neither physically threatening nor particularly humiliating," but rather "merely offensive utterances" do not give rise to a hostile working environment. *Stevens*, 267 F. App'x at 686.

In *Stevens*, the plaintiff was repeatedly called "old," and "OG" on numerous occasions. *Id*. at 685. The court held this was too isolated and sporadic to give rise to a hostile work environment and affirmed the district court's award of summary judgment in favor of the defendant. *Id*. at 686. In *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 836 (9th Cir. 1996), the plaintiff's coworker told her that she did not "think women over 55 should be working," and that "[o]ld people should be seen and not heard." The court held that although these two comments "are objectively indicative of age-based animus," the plaintiff offered no other evidence that the hostility in her workplace was in any way related to age. *Id*. See also *Phillips v. City of Atlanta*, 2016 WL 5429668, at *16 (N.D. Ga. July 29, 2016) (finding that three isolated incidents involving different coworkers who commented on plaintiff being "too old to wear dresses and heels" was merely "simple teasing" and did not amount to discriminatory changes in the terms and

FP 55577764.1

conditions of employment). *C.f. Gonzalez v. Sutton Park Ctr. for Nursing & Rehab.*, 2025 WL 920607, at *8 (S.D.N.Y. Mar. 26, 2025) (finding that comments by coworkers about plaintiff's clothing and the way she dressed, including that she "look[ed] like a teenager" when she wore "a lace skirt" were age-neutral and not discriminatory); *Russell v. Bd. of Trustees of U. of Ill. at Chicago*, 243 F.3d 336, 343 (7th Cir. 2001) (finding that employee's comments to female coworker that she dressed "sleazy" and "like a whore, and had been "hired for her looks," were "hardly admirable" but did not constitute actionable conduct).

Here, the Court previously held that the ageist statements and conduct alleged in the original Complaint "do not rise to the level of being so severe or pervasive that they created an objectively abusive working environment." (Doc. 17, 6:20–22) The Amended Complaint does not include any additional allegations of specific ageist comments that were not included in the original Complaint. Nor does the Amended Complaint include any additional allegations regarding the frequency of the ageist comments, other than vaguely alleging that they "continued and escalated through January 2023," that they were "frequent," and that they were "part of a continuous pattern," which merely indulges Plaintiff's generalized theory of ongoing harassment. (Doc. 18, ¶¶ 20, 24, 43) The only new allegation that is included in Plaintiff's' Amended Complaint is that during three open forum meetings in December 2022 and January 2023, residents publicly criticized her "for her appearance, demeanor, and management style," including that she dressed "inappropriately." (Doc. 18, ¶ 19) However, Plaintiff fails to explain how these criticisms related to her age or were motivated by age-based animus.

Even considering the new allegations, Plaintiff has not alleged anything that could plausibly qualify as the type of severe or pervasive conduct required to support an actionable claim for age-based harassment or a hostile work environment. The Ninth Circuit has held that even calling an employee a "castrating bitch" does not constitute severe or pervasive discriminatory misconduct. *See Kortan v. Cal. Youth Auth.*, 217 F.3d

FP 55577764.1

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

1104, 1110 (9th Cir. 2000). Thus, three off-hand comments about disliking the way that Plaintiff was dressed cannot support an actionable claim for violation of the ADEA.[1]

### 3. *Plaintiff's Claim for Constructive Discharge Fails as a Matter of Law Because the Conduct at Issue Was Not So Intolerable as to Compel a Reasonable Person to Resign*

In the context of constructive discharge claims, the Ninth Circuit has held that a plaintiff must produce sufficient evidence to show that the plaintiff's working conditions were "so intolerable and discriminatory that reasonable person would feel forced to resign." *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1412 (9th Cir. 1996). In *Schnidrig*, the plaintiff "was not demoted, did not receive a cut in pay, was not encouraged to resign or retire, and was not disciplined." *Id*. Thus, the court held that the plaintiff was not forced to resign, and that plaintiff's working conditions were not intolerable. *Id*. "The standard for determining constructive discharge is an objective one." *Bauer v. Board of Supervisors*, 44 Fed. Appx. 194, 199 (9th Cir. 2002); *See also Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987).

Here, just as Plaintiff's allegations of age discrimination do not satisfy the severe and pervasive standard required to support a claim for a hostile work environment, they similarly do not constitute the type of "intolerable" working conditions that would force a reasonable person to resign. Plaintiff did not receive any form of adverse employment action, let alone the type of adverse employment action that would give rise to the level of intolerable and discriminatory working conditions that would have compelled her resignation. Thus, Plaintiff's constructive discharge claim fails as a matter of law.

### IV. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's Amended Complaint at Doc. 18 in its entirety, with prejudice.

---

[1] The Court already found that one of these comments, that Plaintiff appeared "too young to work" there, does not support her ADEA claim. (Doc. 17, 6:25–7:2)

FP 55577764.1

1    RESPECTFULLY SUBMITTED this 11th day of July 2025.

FISHER PHILLIPS LLP

By s/ *David G. Myers*
    Pavneet Singh Uppal
    David G. Myers
    3200 N. Central Avenue, Suite 1550
    Phoenix, Arizona 85012-2487
    Attorneys for Defendant

FP 55577764.1

**CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

Matthew V. Moosbrugger
MOOSBRUGGER LAW, PLLC
2415 E. Camelback Rd. Ste. 700
Phoenix, Arizona 85016
Matthew@Moosbrugger-Law.com
Attorneys for Plaintiff


  s/ *Itzel Cano*

13

FP 55577764.1

# EXHIBIT A

## CERTIFICATE OF CONFERRAL

In compliance with Rule 12.1(c) of the Local Rules of Civil Procedure for the District of Arizona, undersigned counsel certifies that prior to filing this Motion to Dismiss, he notified opposing counsel of the issues asserted in this Motion. Specifically, counsel for Defendant conferred with Plaintiff's counsel regarding the pleading deficiencies contained in Plaintiff's Amended Complaint during a telephone call zoom call that took place on June 13, 2025. As of the date of this Motion, the parties have been unable to agree to amendments of the Amended Complaint to resolve the deficiencies asserted herein.

DATED this 11th day of July 2025.

FISHER PHILLIPS LLP

By  s/ *David G. Myers*
    Pavneet Singh Uppal
    David G. Myers
    3200 N. Central Avenue, Suite 1550
    Phoenix, Arizona 85012-2487
    Attorneys for Defendant

14

FP 55577764.1